UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARGEPOINT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OVERTON CLABORNE, et al.,<br><br>Defendants. | Case No.  5:21-cv-08050-EJD<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 13 |

Plaintiff ChargePoint, Inc. ("ChargePoint") initiated this suit against Overton Claborne, an individual, and Overton Instruments, a business organization, asserting claims for breach of contract, misappropriation of trade secrets under California Civil Code section 3426.1, and misappropriation of trade secrets under 18 U.S.C. section 1836. Dkt. No. 1. On January 19, 2022, the Clerk of Court entered default against both Defendants. Dkt. Nos. 10-11.

Before the Court is ChargePoint's motion for default judgment. Dkt. No. 13. This motion is suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, ChargePoint's motion for default judgment is granted.

I.  **BACKGROUND**[1]

ChargePoint was and is a Delaware corporation and is authorized to conduct business in California. Complaint ("Compl."), Dkt. No. 1, ¶1. It is one of world's largest operators of electric vehicle (EV) charging station networks in North America and Europe. *Id*. ChargePoint designs, builds, and supports all the technology powering its network. *Id*. ¶ 10.

---

[1] The Background is a summary of the allegations in the Complaint.

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
1

ChargePoint alleges on information and belief that Defendant Overton Claborne ("Claborne") is an individual residing in Martinez, California. *Id*. ¶ 2. He is sued in his capacity as an individual and as an agent of Defendant Overton Instruments, which is a business organization, form unknown, with a principal place of business in Milpitas, California. *Id*. ¶¶ 2-3. Claborne is the "owner/manager" of Overton Instruments. *Id*. ¶ 21.

Claborne worked for ChargePoint as a consultant from about June 16, 2020, to about July 16, 2021. *Id*. ¶ 18. As a condition of his performing consulting work for ChargePoint, Claborne signed and agreed to be bound by ChargePoint's Employee Proprietary Information and Inventions Agreement ("Confidentiality Agreement"), a copy of which is attached to the Complaint. *Id*. ¶ 18.

Overton Instruments was one of ChargePoint's authorized vendors. In connection with becoming an authorized ChargePoint vendor, Overton Instruments, by its owner/manager Claborne, signed and agreed to be bound by ChargePoint's Mutual Nondisclosure Agreement ("NDA"), a copy of which is attached to the Complaint.

On July 16, 2021, ChargePoint terminated Claborne's consulting agreement. *Id*. ¶ 23. On or about July 16, 2021, ChargePoint sent Claborne a confirmation notification that his consulting services had been terminated. *Id*. ¶ 24. This notification included a Termination Certification through which ChargePoint reminded Claborne of his obligations under the Confidentiality Agreement. *Id*. The Termination Certification also required Claborne to certify that he returned and does not have any of ChargePoint's property in his possession. *Id*. On August 12, 2021, ChargePoint sent Claborne a confidentiality obligation reminder letter. *Id*. ¶ 25. The next day, Claborne signed and returned ChargePoint's Termination Certification. *Id*. ¶ 26.

On about October 4, 2021, one of ChargePoint's vendors, C.C.P. Contact Probes ("C.C.P."), informed ChargePoint that Claborne and/or Defendant Overton Instruments sent an email that included a portion of one of ChargePoint's technical drawings of its Blind Mate Connector. *Id*. ¶ 27. Claborne and Overton Instruments (collectively "Defendants") requested C.C.P. send them certain technical information on the connector. *Id*. C.C.P. sent ChargePoint a

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

2

copy of the email. *Id*. ¶ 28. Upon receipt, ChargePoint confirmed that Defendants had sent C.C.P. a portion of one of ChargePoint's technical drawings of its Blind Mate Connector. *Id*. ¶ 29. The information in the technical drawings is highly confidential and ChargePoint considers it a trade secret. *Id*.

ChargePoint alleges that Defendants' possession of the technical drawings violated the Confidentiality Agreement, the NDA, and Claborne's representations in his Termination Certification. *Id*. ¶ 31. Further, ChargePoint alleges that Defendants' use of ChargePoint's information regarding the Blind Mate Connector violated the Confidentiality Agreement and the NDA. *Id*. ¶ 32.

Defendants allegedly conspired and aided and abetted each other to commit the alleged unlawful acts. *Id*. ¶¶ 4, 5. Defendants also "were the partners, engaging in a joint venture, agents, employees, alter egos, and representatives of each other," when committing the alleged unlawful acts, acting within the scope of their respective authorities as agents, employees and representatives. *Id*. ¶ 5. Therefore, Defendants are jointly and severally liable to ChargePoint. *Id*.

Based on the foregoing, ChargePoint asserts breach of the Confidentiality Agreement against Claborne; breach of the NDA against Overton Instruments; misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("UTSA"), California Civil Code § 3426.1, against Defendants; and violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, against Defendants. ChargePoint seeks an order enjoining Defendants from utilizing ChargePoint's confidential, proprietary and/or trade secret information, and "requiring Defendants to return to ChargePoint all of its confidential, proprietary, and trade secret information, and any other property they have converted or misappropriated or otherwise have in their possession, custody, or control that ChargePoint has not authorized them to possess." *Id*. at 16. ChargePoint also seeks an award of reasonable attorneys' fees and costs. *Id*.

ChargePoint served Defendants on October 19, 2021. Dkt. Nos. 8-1, 9-1, 13-1. ChargePoint requested the Court enter their defaults on January 19, 2021. Dkt. Nos. 8 and 9. The Clerk of Court entered defaults against Defendants on January 24, 2022. Dkt. Nos. 10 and 11.

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
3

ChargePoint filed and served the instant motion for default judgment on March 24, 2022. Dkt. Nos. 13, 14.

## II.    STANDARDS

Default judgment may be granted when a party fails to plead or otherwise defend against an action for affirmative relief. Fed. R. Civ. P. 55(a). Discretion to enter default judgment rests with the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When deciding whether to enter default judgment, the court considers:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the underlying default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citing 10 Moore's Federal Practice § 55). In evaluating these factors, all factual allegations in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## III.    DISCUSSION

Before entering default judgment, a court must determine whether it has subject matter jurisdiction over the action and personal jurisdiction over Defendants. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("A judgment entered without personal jurisdiction over the parties is void.").

### A.    Jurisdiction

The Court has subject matter jurisdiction over this lawsuit pursuant to the DTSA and 28 U.S.C. section 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. section 1367.

### B.    Service of Process

Serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R.

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
4

Civ. P. 4(k)(1). Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual defendant may be served by: (1) delivering a copy of the summons and complaint to the individual personally; (2) leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process. Fed. R. Civ. P. 4(e)(2). Alternatively, an individual defendant may be served with process pursuant to the law of the state where the district court is located. Fed. R. Civ. P. 4(e)(1).

Under California law, individual defendants may be served by several means, including through substituted service. California Code of Civil Procedure section 415.20(b) states, in pertinent part,

> (b) If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Code Civ. Proc. § 415.20(b).

The record indicates that ChargePoint was unable to personally serve the summons and complaint on Defendants. Dkt. Nos. 8-9. ChargePoint thereafter served Defendants at their "usual mailing address" in accordance with California Code of Civil Procedure section 415.20(b). *Id*. The Court is satisfied that Plaintiff gave Defendants proper service of process under both the Federal Rules of Civil Procedure and the California Code of Civil Procedure. Therefore, the Court has personal jurisdiction over Defendants.

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
5

**C.     *Eitel* Factors**

The Court finds that the *Eitel* factors support granting default judgment.

### 1.     Possibility of Prejudice to Plaintiff

The first *Eitel* factor requires the Court to consider whether the plaintiff would be prejudiced if default judgment is not entered. If default judgment is not entered in this case, ChargePoint will have no recourse against Defendants. As such, ChargePoint will be prejudiced if default judgment is not entered. *See*, *e.g.*, *Johnson v. In Suk Jun*, No. 19-CV-06474-BLF, 2020 WL 6507995, at *3 (N.D. Cal. Nov. 5, 2020).

### 2.     Substantive Merits and Sufficiency of the Claims

Under the second and third *Eitel* factors, the Court must examine the merits of a plaintiff's substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72; *see also Bd. of Trustees, I.B.E.W. Local 332 Pension Plan Part A v. Delucchi Elec., Inc.*, No. 5:19-CV-06456-EJD, 2020 WL 2838801, at *2 (N.D. Cal. June 1, 2020) ("Courts often consider the second and third *Eitel* factors together") (citing *PepsiCo, Inc. v. Cal. Security Cans*, 283 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). At this stage, the Court takes "the well-pleaded factual allegations" in the complaint as true. However, the "defendant is not held to admit facts that are not well pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The motion seeks default judgment on all claims. The Court examines each claim in turn.

#### a.     Breach of the Employee Proprietary Information and Inventions Agreement

To establish Claborne breached the Confidentiality Agreement, ChargePoint must establish that (1) Claborne entered into the Agreement; (2) ChargePoint performed its obligations under the Agreement; (3) Claborne breached the Agreement; and (4) ChargePoint is entitled to its requested relief. *See Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). ChargePoint's Complaint establishes each of these elements. Claborne entered into the Agreement. Compl. ¶¶

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
6

18, 34, Ex A. ChargePoint performed its obligations under the Agreement or was excused from doing so. *Id.* ¶ 35. Claborne breached the Agreement by (i) "removing, disclosing, distributing, selling, transferring, using, and/or publishing ChargePoint's confidential, proprietary, and/or trade secret information without ChargePoint's authorization" and (ii) "retaining and not returning to ChargePoint ChargePoint's confidential, proprietary, and/or trade secret information without ChargePoint's authorization on the termination of his consulting assignment." *Id.* ¶¶ 38-39. ChargePoint has also established it is entitled to injunctive relief. *Id.*, Ex. A, Sec. X. Specifically, the Agreement states:

> Because of the unique nature of the Confidential Information and the Company Work Product, Employee understands and agrees that Company will suffer immediate and irreparable harm if Employee fails to comply with any of his or her obligations under this Agreement and that monetary damages will be inadequate to compensate Company for such breach. Accordingly, Employee agrees that in the event of a breach or threatened breach of this Agreement, in addition to any other remedies available to it at law or in equity, Company will be entitled, without posting bond or other security, to injunctive relief to enforce the terms of this Agreement, including, but not limited to, restraining Employee from violating this Agreement or compelling Employee to cease and desist all unauthorized use and disclosure of the Confidential Information and Company Work Product. Employee will indemnify Company against any costs, including, but not limited to, reasonable legal fees and costs, incurred in obtaining relief against Employee's breach of this Agreement.

*Id*.

### b.     Breach of the NDA

ChargePoint has also established breach of the NDA. ChargePoint entered into the NDA with Overton Instruments. Compl. ¶ 21, Ex. B. ChargePoint performed all its obligations under the NDA or was excused from doing so. *Id.* ¶ 49. Overton Instruments breached the NDA by by acquiring, accessing, disclosing, or using ChargePoint's confidential, proprietary, and/or trade secret information, including protected information regarding the Blind Mate Connector, without ChargePoint's authorization. *Id.* ¶ 48. ChargePoint has also established it is entitled to the requested injunctive relief. *Id.* ¶¶ 50-51 (alleging ChargePoint has no adequate remedy at law for Overton Instruments use of protected information).

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
7

### c. Trade Secret Misappropriation

The elements for a misappropriation claim under the UTSA and the DTSA are virtually the same. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. 2017). To establish a claim for trade secret misappropriation under the UTSA, a plaintiff must demonstrate: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal. App. 4th 288, 296 (2008) (citing Cal. Civ. Code § 3426.2); *see also Bemis Co., Inc. v. Summers*, 2019 WL 1004853, at *3 (E.D. Cal. 2019) ("The standards for establishing misappropriation of trade secrets under federal and California law are similar.").

ChargePoint has established the elements of trade secret misappropriation. First, ChargePoint has a protectable trade secret in the information regarding its Blind Mate Connector. Compl. ¶54; Emmert Decl., Ex. A, ¶ 7. A "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique or process" that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and; (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d); 18 U.S.C. §1839(3). ChargePoint alleges that Blind Mate Connector derives independent economic value from not being known and is the subject of reasonable efforts to protect its secrecy. Compl. ¶¶ 11-17, 55-56. ChargePoint alleges that it has invested significant time, money, and other resources, designing, developing, manufacturing, and testing the Blind Mate Connector. *Id*. ¶¶ 11-13. The Blind Mate Connector and related products are still in the development phase and ChargePoint anticipates continuing to expend significant time and resources to complete testing and developing the final product. *Id*. ¶ 13. The Blind Mate Connector is a unique proprietary design that is not known or used by ChargePoint's competitors. *Id*. ¶ 14. ChargePoint has not disclosed the Blind Mate Connector's design or specification to any individual or entity absent a non-disclosure agreement. *Id*.

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
8

ChargePoint has also established Defendants misappropriated its protected information. Misappropriation is defined in pertinent part as the (1) acquisition, (2) disclosure, or (3) use of a trade secret through improper means. See Cal. Civ. Code § 3426.1(a); 18 U.S.C. § 1839(5)(A)–(B). "Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(a). ChargePoint alleges that Defendants misappropriated its protected information. Compl. ¶¶ 23-32, 52-69. Specifically, Defendants failed to return technical drawings for ChargePoint's Blind Mate Connector and sent those drawings to C.C.P. *Id*.

Lastly, ChargePoint alleges it has been injured "in that its protected information is being acquired, disclosed, and/or used without ChargePoint's authorization resulting in a loss of trade secret protection for its confidential information." *Id*. ¶ 58.

In sum, the second and third *Eitel* factors weigh in favor of granting default judgment.

### 3. Sum of Money in Dispute

"When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trustees v. Core Concrete Const., Inc.*, No. 11-CV-002532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012), report and recommendation adopted, No. 11-CV-02532 JSW, 2012 WL 381198 (N.D. Cal. Feb. 6, 2012). However, "where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id*. (citing *Bd. of Trustees of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, No. 10-CV-2212 EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011)).

Here, ChargePoint is seeking injunctive relief, $20,729.00 in attorneys' fees and $680.00 in costs. Although the sum at stake is not insignificant, the Court finds that it is proportional to the conduct alleged. Therefore, the sum of money in dispute weighs in favor of granting default judgment.

### 4. Possibility of Dispute Concerning Material Facts

Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of a dispute over material facts and whether Defendants' failure to respond was the result of

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
9

excusable neglect. *Eitel*, 782 F.2d at 1471-72; *Love v. Griffin*, No. 18-CV-00976 JSC, 2018 WL 4471073, at *5 (N.D. Cal. Aug. 20, 2018), report and recommendation adopted, No. 18-CV-00976-JD, 2018 WL 4471149 (N.D. Cal. Sept. 17, 2018); *Ridola*, 2018 WL 2287668, at *13.

The Complaint asserts plausible claims and all liability-related allegations are deemed true. *See TeleVideo Systems, Inc.*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)) ("The general rule of law is that upon default the factual allegations of the complaint . . . will be taken as true."). Thus, there are no disputes as to ChargePoint's allegations.

Defendants were served with the Complaint, the requests for entry of default, and the Motion for Default Judgment. Dkt. Nos. 6-9, 14. Despite being properly served, Defendants have not appeared. Thus, there is no indication that Defendants' defaults were due to excusable neglect. *See In Suk Jun*, 2020 WL 6507995, at *6 (finding that defendants' failure to appear suggests that they chose not to present a defense).

Accordingly, the fifth and sixth *Eitel* factors weigh in favor of default judgment.

### 5. Strong Policy Favoring Decisions on the Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id*. "The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not dispositive." *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, No. 14-CV-03127 JD, 2015 WL 4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's Fund, No*. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Moreover, a defendant's failure to appear renders a decision on the merits impracticable, if not impossible. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation and quotation marks omitted).

Defendants' failure to participate in the proceedings makes a decision on the merits impracticable. "In situations such as this, Rule 55(b) allows the court to grant default judgment."

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
10

*Bd. of Trustees v. Diversified Concrete Cutting, Inc.*, No. 17-CV-06938 MEJ, 2018 WL 3241040, at *5 (N.D. Cal. July 3, 2018), report and recommendation adopted sub nom. *Bd. of Trustees as Trustees of Laborers Health & Welfare Tr. Fund for N. Cal. v. Diversified Concrete Cutting, Inc.*, No. 17-CV-06938 RS, 2018 WL 4775429 (N.D. Cal. July 27, 2018). As such, the seventh *Eitel* factor weighs in favor of default judgment.

After considering all seven *Eitel* factors and the circumstances of this case, the Court finds that default judgement is warranted.

### D.     Requested Relief

ChargePoint requests injunctive relief, attorneys' fees and costs.

#### i.     Injunctive Relief

ChargePoint requests an injunction against Defendants Overton Claborne and Overton Instruments mandating that they are:

> 1. Prohibited from possessing, accessing, using, and/or disclosing in any manner whatsoever any and all of ChargePoint's non-public confidential, proprietary, and/or trade secret information that ChargePoint has not authorized Defendant Claborne and Defendant Overton Instruments to use, possess, or disclose including, but not limited to, its confidential, proprietary, and/or trade secret information regarding its Blind Mate Connector; and
>
> 2. Required to return all hard copies of any and all of ChargePoint's information that ChargePoint has not authorized Defendant Claborne and Defendant Overton Instruments to use, possess, or disclose including, but not limited to, its confidential, proprietary, and/or trade secret information within 30 days of the date of entry of this Judgment; and
>
> 3. Required to permanently destroy all electronic copies of any and all of ChargePoint's information that ChargePoint has not authorized Defendant Claborne and Defendant Overton Instruments to use, possess, or disclose including, but not limited to, its confidential, proprietary, and/or trade secret information within 30 days of the date of entry of this Judgment.

Mot. at 5. The Confidentiality Agreement provides that ChargePoint is entitled to injunctive relief in the event of a breach or threatened breach of the Agreement. Compl., Ex. A, Sec. X. The UTSA and the DTSA also authorize injunctions to prevent violations. *See* Cal. Civ. Code § 3426.2(a); 18 U.S.C. § 1836(b)(3).

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
11

### ii. Fees and Costs

ChargePoint requests $20,729.00 in attorneys' fees and $680.00 in costs. "The DTSA and CUTSA authorize an award of reasonable attorneys' fees to the prevailing party if the trade secret was willfully and maliciously appropriated." *See DiscoverOrg Data, LLC v. Bitnine Glob., Inc.*, 2020 WL 6562333, at *10 (N.D. Cal. Nov. 9, 2020). Here, the Court finds that the allegations and evidence support a finding that Defendants willfully and maliciously appropriated trade secrets. Moreover, Claborne misrepresented that he had returned all of ChargePoint's confidential information.

To calculate recoverable fees, both federal and state courts look to the lodestar method. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). The court arrives at this figure by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Ketchum*, 24 Cal. 4th at 1132.

Counsel has not submitted sufficient documentation in support of the request for fees, without which the Court cannot assess the reasonableness of the request. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) ("In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended."); *see also Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (fee applicant must produce evidence proving that the requested rates are in line with those prevailing in the community for similar services).

The request for $680.00 in costs also lacks sufficient documentation. The docket indicates that ChargePoint paid the $402 filing fee (Dkt. No. 1), but there is no evidence to substantiate the remaining $278 in costs.

Therefore, the request for fees and costs is denied without prejudice to renew the request with additional more specific documentation.

## IV. CONCLUSION

For the reasons stated above, ChargePoint's motion for default judgment is GRANTED.

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
12

Defendants Overton Claborne and Overton Instruments are hereby:

    1.    Prohibited from possessing, accessing, using, and/or disclosing in any manner whatsoever any and all of ChargePoint's non-public confidential, proprietary, and/or trade secret information that ChargePoint has not authorized Defendant Claborne and Defendant Overton Instruments to use, possess, or disclose including, but not limited to, its confidential, proprietary, and/or trade secret information regarding its Blind Mate Connector; and

    2.    Required to return all hard copies of any and all of ChargePoint's information that ChargePoint has not authorized Defendant Claborne and Defendant Overton Instruments to use, possess, or disclose including, but not limited to, its confidential, proprietary, and/or trade secret information within 30 days of the date of entry of this Judgment; and

    3.    Required to permanently destroy all electronic copies of any and all of ChargePoint's information that ChargePoint has not authorized Defendant Claborne and Defendant Overton Instruments to use, possess, or disclose including, but not limited to, its confidential, proprietary, and/or trade secret information ChargePoint is awarded.

ChargePoint's request for attorneys' fees and costs is denied without prejudice.

**IT IS SO ORDERED.**

Dated: October 25, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-08050-EJD
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
13